IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEPHEN MORANDO, | Civil Action No. 11-cv-5075 (SDW) (MCA) |
| Plaintiff, | |
| v. | |
| NETWRIX CORPORATION and MICHAEL FIMIN, Individually, | |
| Defendants. | |

BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND TO COMPEL ARBITRATION, FILED IN LIEU OF AN ANSWER PURSUANT TO FED.R.CIV.P. 12(b)(6)

**GRAHAM CURTIN**
A Professional Association
4 Headquarters Plaza; P.O. Box 1991
Morristown, New Jersey 07962-1991
(973) 292-1700
Attorneys for Defendants,
NetWrix Corporation and Michael Fimin

Christopher J. Carey, Esq.
   *Of Counsel*

David M. Blackwell, Esq.
Megan Halverson Trexler, Esq.
   *On the Brief*

1350539_1

## **PRELIMINARY STATEMENT**

Plaintiff, Stephen Morando, filed this action against his former employer, NetWrix Corporation ("NetWrix"), alleging violations under the New Jersey Law Against Discrimination and the Fair Labor Standards Act.  While denying all allegations of wrongdoing by Plaintiff, NetWrix submits that these claims are not properly before this Court.  Plaintiff agreed not once, but twice, to arbitrate "any and all disputes" arising out of his employment with NetWrix, including any and all disputes relating to conditions of employment and any termination of employment.  Further, Plaintiff explicitly waived his right to litigate these claims in favor of arbitration in accordance with the Federal Arbitration Act.  Accordingly, because all claims alleged by Plaintiff fall within the scope of the valid arbitration provisions contained within Plaintiffs' employment agreements with NetWrix, the Complaint herein should be dismissed and arbitration compelled pursuant to Fed.R.Civ.P. 12(b)(6).

**STATEMENT OF FACTS**

Plaintiff, Stephen Morando, first began working as an inside sales representative for Defendant, NetWrix Corporation ("NetWrix") on or about June 29, 2009. (See Ex. A [the "2009 Employment Agreement"]). In connection with his employment with NetWrix, Plaintiff executed an employment agreement on June 29, 2009. (Id.). The 2009 Employment Agreement included the following provision, in pertinent part:

> 11.3 *Arbitration*. Any dispute, controversy or claim of any nature (whether under federal, state or local laws, and whether based on contract, tort, common law, statute, strict liability or otherwise) arising out of, involving, affecting or related in any way to this Agreement or any of its provisions, the performance of this Agreement, an alleged or anticipated breach of this Agreement, Employee's recruitment, employment with, or termination from [NetWrix], the conditions of Employee's employment, or any act or omission of [NetWrix] or [NetWrix's] other Employees, <u>shall be resolved by final and binding arbitration</u>, pursuant to the Federal Arbitration Act and/or the New Jersey Arbitration Act, in accordance with the applicable rules of the American Arbitration Association.

(Ex. A, § 11.3) (emphasis added). In or around December 2010, Plaintiff resigned from his employment with NetWrix. (See Ex. B [Separation Agreement and Release]).

Plaintiff was later again employed by NetWrix beginning on or about April 18, 2010 as an inside sales representative. (See Ex. C [the "2010 Employment Agreement]). Plaintiff also signed an agreement with respect to his second employment opportunity with NetWrix. (Id.). The 2010 Employment Agreement contained the same Arbitration provision as the 2009 Employment Agreement, wherein the parties specifically agreed that "Any dispute, controversy or claim of any nature … arising out of, involving, affecting or related in any way to … Employee's recruitment, employment with, or termination from [NetWrix], [including] the conditions of Employee's employment … <u>shall be resolved by final and binding arbitration</u>[.]" (Ex. C, § 11.3) (emphasis added).

Both the 2009 Employment Agreement and the 2010 Employment Agreement also contain the following provision:

> 11.4 *Waiver of Litigation Rights*. Neither party may file or maintain any lawsuit, action or legal proceeding of any nature with respect to any dispute controversy or claim within the scope of Section 11.3 of this Agreement, including, but not limited to, any lawsuit, action or legal proceeding challenging the arbitrability of any such dispute, except for the following purposes: (i) seeking to compel arbitration; (ii) seeking to stay or dismiss any lawsuit, action or legal proceeding filed by the other party in violation of this paragraph; (iii) seeking preliminary relief to maintain the status quo ante pending the outcome of the arbitration; or (iv) seeking to confirm, vacate, modify and/or enforce the award of the arbitrator. <u>Employee understands and agrees that he/she is waiving any right he/she may have to a trial by jury</u>.

(Ex. C, § 11.4) (emphasis added). Further, Plaintiff acknowledged that he understood the terms and conditions of the agreement and that he had an adequate opportunity to consider the agreement and to consult with an attorney. (Ex. C, p. 6). Plaintiff was terminated from his employment with NetWrix on or about July 7, 2011 as a result of Plaintiff's poor sales performance.

Plaintiff now brings this action against NetWrix and Michael Fimin, President of NetWrix, for alleged violations of the Fair Labor Standards Act (the "FLSA") and for alleged discriminatory and retaliatory discharge in violation of the New Jersey Law Against Discrimination (the "NJLAD"). (Ex. D [Compl.]). Specifically, Plaintiff alleges that he regularly worked over forty (40) hours per week, but was not paid overtime wages. (Ex. D at ¶¶ 30-31). Plaintiff further alleges that he advised NetWrix that he had been diagnosed with an anxiety disorder and requested to work from home. (Ex. D at ¶ 39). Plaintiff alleges that he was terminated in retaliation for seeking an accommodation for his alleged disability. (Ex. D at ¶ 41).

Because these claims arise out of Plaintiff's employment with and termination from NetWrix, thereby falling squarely within the scope of the aforementioned arbitration provisions

contained in the 2009 Employment Agreement and the 2010 Employment Agreement, these claims must be dismissed and proceed to arbitration.

# LEGAL ARGUMENT

## THE COURT SHOULD DISMISS THE COMPLAINT AND COMPELL ARBITRATION IN ACCORDANCE WITH THE ARBITRATION PROVISION AGREED TO BY THE PARTIES

### A. A Motion to Dismiss and Compel Arbitration May be Made as a Rule 12(b)(6) Motion in Lieu of an Answer

A motion to compel arbitration may properly be considered as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  Palcko v. Airborne Express, Inc., 372 F.3d 588, 597 (3d Cir. 2004).  When considering a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), "a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff." Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  A Rule 12(b)(6) motion to dismiss should only be granted where "it appears to a certainty that no relief could be granted under any set of facts which could be proved." Id.

"To survive a motion to dismiss, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Santiago v. Warminster Twp., 629 F.2d 121, 128 (3d Cir. 2010) (quoting Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n.27 (3d Cir. 2010)).  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Sheridan, 609 F.3d at 262 n.27).

Pursuant to the standard set forth in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 129 S. Ct.  1937 (2009), when determining the sufficiency of a complaint under the pleading regime established by those cases, the Court will undertake the following three steps:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court

>   should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Santiago, 629 F.3d at 130 (internal citations omitted). Here, the Complaint fails to state a cognizable claim and must be dismissed because Plaintiff agreed to submit any and all claims arising out of his employment and the conditions of his employment to arbitration.[1]

### B. The Court Should Enforce the Valid, Agreed Upon Arbitration Provision

Public policy, as set forth in the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et. seq., favors the enforcement of arbitration agreements. See Harris v. Green Tree Financial Corp., 183 F.3d 173, 178 (3d Cir. 1999). Indeed, the FAA expressly confirms the enforceability of arbitration agreements. The "central purpose" of the Act is to ensure "that private agreements to arbitrate are enforced according to their terms." Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 53-54, 115 S. Ct. 1212, 1214, 131 L. Ed. 2d 76, 82 (1995). Section 2 of the FAA provides, in relevant part, that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2.[2]

The Supreme Court has repeatedly described this provision "as reflecting both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." AT&T Mobility, LLC v. Concepcion, __ U.S. __, 131 S. Ct. 1740, 1745, 179 L. Ed. 2d 742, 751 (2011) (internal quotations and citations omitted). The FAA further provides that,

---

[1] NetWrix and Fimin acknowledge that when matters outside the pleading are presented, the Court may convert a Rule 12(b)(6) motion to one for summary judgment under Rule 56. See Fed.R.Civ.P. 12(d).

[2] To be a "transaction involving commerce," the contract at issue need only have "the slightest nexus" to interstate commerce. Crawford v. W. Jersey Health Systems, 847 F. Supp. 1232, 1240 (D.N.J. 1994). "Indeed, the Supreme Court has held that employment contracts, except for those covering workers engaged in transportation, are covered by the FAA." Elli v. Genmab, Inc., 2006 U.S. Dist. Lexis 74615 (D.N.J. Oct. 13, 2006) (citing Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 121 S. Ct. 1302, 149 L. Ed. 2d 234 (2001); E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002)). Thus, the FAA applies to the arbitration clause in the Employment Agreement.

1350539_1

when an action is before "any of the courts of the United States," and that action is referable to arbitration pursuant to a written arbitration agreement, a party to an action may apply to the court to "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.  Section 4 of the Act allows for a party, who is aggrieved by their adversary's failure or refusal to arbitrate pursuant to a written arbitration agreement, to "petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

Moreover, in light of the liberal federal policy favoring arbitration, "all doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Great W. Mortgage Corp. v. Peacock, 110 F.3d 222, 228 (3d Cir. 1997) (affirming decision of the district court staying the matter and compelling arbitration of the plaintiff's NJLAD claims).  See also Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765, 785 (1983).  Arbitration is required where (1) there is a valid agreement to arbitrate and (2) the dispute in question falls within the scope of the arbitration agreement. Century Indem. Co. v. Certain Underwriters at Lloyd's, 584 F.3d 513, 524 (3d Cir. 2009).  See also Opalinski v. Robert Half Int'l, Inc., 2011 U.S. Dist. LEXIS 115534, *3 (D.N.J. Oct. 6, 2011) (finding that the plaintiffs' claims for failure to pay overtime wages arose out of their employment and, therefore, was covered by the arbitration provision) (citation omitted).

Here, there can be no doubt that Plaintiff and NetWrix agreed to arbitrate "any and all claims" arising out of Plaintiff's employment and the conditions related thereto, including his termination and pay structure.  Specifically, Plaintiff agreed to arbitrate any and all claims "arising out, involving, affecting or related in any way to … Employee's recruitment, employment with, or termination from [NetWrix]" and "the conditions of Employee's employment." (Ex. A, § 11.3; Ex. C, § 11.3). See Gilmer v. Interstate/Johnson Lane Corp., 500

1350539_1

U.S. 20, 23, 111 S.Ct. 1647, 114 L.Ed. 26 (1991) (claim under the ADEA is subject to a compulsory arbitration clause where the arbitration provision applies to "any dispute, claim or controversy" arising out of the employment or termination of employment); Crawford v. West Jersey Health Sys., 847 F. Supp. 1232, 1242-43 (D.N.J. 1994) (enforcing arbitration of Title VII and NJLAD claims where arbitration provision applied to "any dispute [arising] with regard to the interpretation or performance of any part of this [Employment] Agreement") Martindale v. Sandvik, 173 N.J. 76, (N.J. 2002) (finding the arbitration provision within plaintiff's employment agreement to apply to plaintiff's statutory NJLAD claims).

   This action, where Plaintiff alleges that he was wrongfully terminated and that he did not receive overtime wages in violation of the FLSA, falls squarely within the scope of the arbitration provisions in the 2009 and 2010 Employment Agreements because these claims arise out of Plaintiff's employment or the conditions of Plaintiff's employment. (See Ex. A, § 11.3; Ex. C, § 11.3).  Furthermore, Plaintiff has knowingly and voluntarily waived his right to litigate this action in favor of arbitration with respect to any such claim. (See Ex. A, § 11.4; Ex. C, § 11.4). See Martindale, supra, 173 N.J. at 95-97.  Therefore, these valid arbitration provisions must be enforced, thereby compelling arbitration and dismissing the Complaint herein.

1350539_1

## CONCLUSION

Based upon the foregoing reasons, the Complaint herein should be dismissed and the arbitration provision within the 2009 and 2010 Employment Agreements should be enforced.

                                                **GRAHAM CURTIN**
                                                *A Professional Association*
                                                Attorneys for Defendants,
                                                NetWrix Corporation and Michael Fimin

Dated:  October 21, 2011                   */s/ David M. Blackwell*
                                                David M. Blackwell

1350539_1