Michael DiChiara (MD 2180)
DiChiara Law Firm LLC
77 Market Street, Suite 2
Park Ridge, NJ 07656
P: (201)-746-0303
F: (866) 417-2333

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
----------------------------------------------------------x

**STEPHEN MORANDO,**

                      Plaintiff,

    -against-

**NETWRIX CORPORATION and**
**MICHAEL FIMIN, individually,**

                      Defendants.
----------------------------------------------------------x

Index No.: 11 CV 5075 (SDW)(MCA)

**MEMORANDUM IN OPPOSITION TO DEFENDANTS'**
**MOTION TO COMPEL ARBITRATION**

## PRELIMINARY STATEMENT

This memorandum is in opposition to Defendants' Motion to Dismiss Plaintiff's Complaint and to Compel Arbitration. Plaintiff Stephen Morando was employed by Defendants from on or about July 24, 2009 through December 2010 and again from April 2011 through July 7, 2011, when he was wrongfully terminated. Plaintiff, who was diagnosed with a severe anxiety disorder, requested the reasonable accommodation of working from home for a period of time. Instead of accommodating Plaintiff's reasonable request, Defendants summarily fired Plaintiff in retaliation for making such request.

Further, throughout Plaintiff's employment with Defendants, Plaintiff was employed in a position that was not exempt from overtime. Although Plaintiff regularly worked in excess of forty hours per week, Defendants never compensated him with the overtime he was statutorily entitled to, even after Plaintiff raised the issue on several occasions. Instead, Plaintiff was openly mocked and criticized. Accordingly, Plaintiff brings this suit against Defendants for violations of the New Jersey Law Against Discrimination for discriminatory conduct and retaliation, as well as violation of Fair Labor Standards Act for unpaid overtime wages.

Defendants moved to dismiss Plaintiff's claims and have the Court enforce arbitration. Although Plaintiff allegedly signed the 2011 Employment Agreement that contained the Arbitration Agreement in question, for the reasons set forth below, the Arbitration Agreement is both procedurally unconscionable and substantively unconscionable. Accordingly, the court should find the Arbitration Agreement unenforceable, and deny Defendants' motion in its entirety.

1

# ARGUMENT

I. **The Arbitration Agreement Is Unconscionable And Unenforceable**

    A. **Congress Has Granted Courts The Authority And Discretion To Refuse To Enforce Arbitration Agreements**

Defendants assert that the arbitration agreement at issue should simply be rubber stamped by this Court. However, referring this case to arbitration is not a *fait accompli*. Congress enacted the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, granting courts the authority to examine and refuse to enforce arbitration agreements when deemed proper in the court's discretion. 9 U.S.C. §2. A federal court must look to the state's contract law to determine whether a valid arbitration agreement exists under the FAA. *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002). Moreover, an arbitration agreement "may be unenforceable based on a generally applicable contractual defense, such as unconscionability." *Alexander v. Anthony Int'l, I.P.*, 146 F.3d 256, 264 (3d Cir. 2003); *see also Martindale v. Sandvik, Inc.*, 173 N.J. 76, 85 (2002) (holding that New Jersey courts may refuse to enforce an arbitration agreement to the extent "such grounds . . . exist at law or equity for the revocation of any contract"). Therefore, a court "must still ascertain whether the parties entered a valid agreement to arbitrate" before directing a parties to arbitration. *Great Western Mortgage Corp. v. Peacock*, 110 F.3d 222, 228 (3d Cir. 1997). In the present case, as the claims arose in New Jersey, this Court should apply New Jersey contract law and find that the arbitration agreement is unenforceable.

As a general principle, courts in New Jersey "may refuse to enforce contracts that are unconscionable." *Saxon Constr. & Mgmt. Corp. v. Masterclean of N.C.*, 273 N.J. Super 231, 236 (App. Div. 1994). Unconscionability is found where there is procedural and substantive unconscionability. *Sitogum Holdings, Inc. v. Ropes*, 352 N.J. Super 555, 564-66 (Ch. Div. 2002). *Procedural unconscionability* "can include a variety of inadequacies, such as age, literacy, lack

2

of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process." *Id.* at 564-65.  *Substantive unconscionability* on the other hand "involves harsh or one-sided terms", including those that abrogate one's otherwise statutory afforded legal rights and remedies.  *Muhammad v. County Bank of Rehoboth Beach*, 189 N.J. 1, 15 (2006). New Jersey courts have found that the two elements do not need to have equal affect but function together as a sliding scale test as to whether an agreement is unconscionable. *Sitogum Holdings, Inc.,* 352 N.J. at 565-66. Defendants 'brief fails to address the numerous provisions of the Arbitration Agreement which, taken as a whole, make the Arbitration Agreement unconscionable and unenforceable.

      B.      **Procedural Unconscionability**

As stated above, procedural unconscionability occurs when there is such a one sided negotiation where one party has no ability to bargain or alter the terms of the agreement that it becomes a contract of adhesion.  Here, the Arbitration Agreement was presented to Plaintiff Morando as a part of his Employment Agreement with no real opportunity to read its contents, consult an attorney, or have any meaningful choice in its terms, thus the Arbitration Agreement was a "classic contract of adhesion". *See Lucier v. Williams*, 366 N.J. Super. 485, 493 (App. Div. 2004) ("This is a classic contract of adhesion. There were no negotiations leading up to its preparation. The contract was presented to [the plaintiff] on a standardized pre-printed form, prepared by [defendants], on a take-it-or-leave-it basis, without any opportunity for him to negotiate or modify any of its terms.").  Although finding the existence of an adhesion contract is not dispositive of enforceability, it is "the beginning . . . of the inquiry." *Gras v. Associates First Capital Corp.,* 346 N.J. Super. 42, 48 (App. Div. 2001) (internal citations omitted).

In fact, the initial agreement was presented to Plaintiff several days after he began working. As one of only three people in the Paramus, New Jersey office, he was directed via email to sign these documents, and had no one of authority to question about the terms of the agreement other than the CEO. The contract was presented on a take it or leave it basis, which is black letter law for a contract of adhesion and procedurally unconscionable. Moreover, the underlying claims here are *prima facie* evidence of Plaintiff's inequitable bargaining position. For example, Plaintiff complained to management of overtime violations pursuant to the Fair Labor Standards Act, and was informed by the CEO that regardless of the law, Netwrix does not do things that way. Later, Plaintiff was terminated after he needed time off due to anxiety triggered by the stressful work environment, and as a result Plaintiff was mocked by the CEO, called a "baby" and later terminated. *See* Declaration of Stephen Morando, dated November 7, 2011. Clearly, such an environment did not foster an ability to negotiate, and any contracts or agreements were those of adhesion.

Indeed, procedural unconscionability is typically satisfied if the agreement constitutes a contract of adhesion. *Muhammad,* 189 N.J. at 16 ("[A]dhesion contracts invariably evidence some characteristics of procedural unconscionability[.]"); *Parilla v. IAP Worldwide Services VI, Inc.,* 368 F.3d 269, 276 (3d Cir. 2004) ([The procedural unconscionability] element is generally satisfied if the agreement constitutes a contract of adhesion."). A contract of adhesion is "[a] contract where one party . . . must accept or reject the contract." *Rudbart v. North Jersey District Water Supply Comm'n,* 127 N.J. 344, 353 (1992). Here, Plaintiff had no options nor did he have access to even begin to question the contract that was presented after he began working in an office thousands of miles away from its foreign national headquarters.

Moreover, the terms of the arbitration agreement are neither clearly defined nor clearly delineated.  The agreement itself is buried in the middle of a employment agreement, and not set apart from the rest of its provisions.  The arbitration agreement at issue is also not prominent, as it is set forth in small font that is difficult to read.  While not exactly prominent, the at-will disclaimer in the agreement, at paragraph 1.4 of the agreement, is at least set forth in all capital letters.  *See* Def. Ex. C at p. 1.  Indeed, the Court would be justified in finding the arbitration provision to be procedurally unconscionable based solely on the location and font of the arbitration provision.  *See Grasser v. United HealthCare Corp.*, 343 N.J. Super. 241, 251 (App. Div. 2001) (language in arbitration agreement must be "clear, distinct, and unambiguous," citing, for example, cases in which waiver language was set out in capital letters).  *See also Rockel v. Cherry Hill Dodge*, 368 N.J. Super. 577, 585-86 (App. Div. 2004)(reversing lower court decision compelling arbitration because size of print, location of the provision, and fact that there was no other prominent language advising of waiver rendered arbitration clause unenforceable).

### B.    Substantive Unconscionability

The Arbitration Agreement is also substantively unconscionable because it significantly limits Plaintiff Morando's statutory rights and unfairly favors Defendants. The Arbitration Agreement provides, in pertinent part:

> The arbitrator shall be permitted to award reasonable attorney's fees, experts' fees, expenses and costs to the prevailing party incurred in any arbitration. . . . The arbitrator shall not award punitive or exemplary damages of any nature.

*See* Def. Ex. C.  However, Morando's claims brought pursuant to the New Jersey Law Against Discrimination and the Fair Labor Standards Act both provide an award of reasonable attorney's fees and costs to a prevailing plaintiff.  *See* N.J.S.A. 10:5-27; 29 U.S.C. § 216(b).  Neither statute

provides prevailing *defendants* recovery of attorney's fees or costs. Moreover, NJLAD and FLSA provide for punitive damages to a prevailing plaintiff. *See id.* Thus, a waiver of substantive remedies afforded to an employee under these statutes provide an unfair advantage for the employer and provides little or no incentive for the employee to file a claim. *See Estate of Ruszala v. Brookdale Living Commu*nities, 415 N.J. Super. 272, 298-99 (App. Div. 2010) (finding arbitration clause that limited compensatory damages and precluded punitive damages to be substantively unconscionable, as the purpose of punitive damages is to demonstrate society's disapproval of abhorrent conduct by punishing the offender and deterring similar future conduct).

The Third Circuit held that a similar arbitration agreement was completely unenforceable because it "substantially limited the relief available to plaintiffs." *Alexander v. Anthony Int'l, I.P.,* 146 F.3d 256, 267 (3d Cir. 2003). The agreement in *Alexander*, similar to the Arbitration Agreement here, limited a successful plaintiff's damages, required claimants to pay for their own arbitration fees, and precluded the award of attorney's fees and costs. The court found that these restrictions were "one-sided and unreasonably favorable to [Defendant]" because they "prevent an employee from recovering not only his or her attorney's fees bust also such potentially significant relief as punitive damages." *Id.* The court in *Alexander* found the Arbitration clause did not allow employees to receive "complete compensation" and allowed the company "to evade full responsibility." *Id.*

The Arbitration Agreement here, while similar to the Alexander provision, is actually more egregious. Whereas the *Alexander* provision required each side to pay for their own costs, this Arbitration Agreement allows defendants to recover costs and attorney's fees. New Jersey public policy would permit an arbitrator to shift costs and fees to an employee who brings a suit

that is "frivolous" or in "bad faith." *See* N.J.S.A. 2A:15-59.1 (recognizing public policy against frivolous or bad faith litigation and establishing penalties for the same).  The Arbitration Agreement in question, however, has no such limitation in the cost-shifting provision.  New Jersey courts have found that such cost-shifting provisions that provide the arbitrator "unfettered discretion to shift the entire cost of the arbitration to [the plaintiff]" create a deterrent for plaintiffs seeking to vindicate their statutory rights.  *Delta Funding Corp. v. Harris,* 912 A.2d 104, 112-13 (N.J. 2006). The court *in Delta Funding* found an Arbitration Agreement that allows an arbitrator to shift costs and fees to the plaintiff --even if the defendants agreed to advance any arbitration costs to the plaintiff -- to be an unconscionable risk for plaintiffs to bear.  *Id.* Similarly, the Arbitration Agreement here gives the arbitrator broad discretion in awarding costs and attorney's fees, creating a substantial deterrent to potential litigants and is unconscionable.

Moreover, for FLSA purposes, a waiver of claims under the FLSA is not enforceable unless approved by a Court of by the Department of Labor.  *See, e.g., Brooklyn Savings v. O'Neil*, 324 U.S. 697, 704 (1945).  By extension, it is only logical that a waiver of substantive rights afforded by the statute would require similar review and approval, and pursuant to *Brooklyn Savings*, supra, cannot be waived by the employee.

7

## CONCLUSION

Based upon the reasons set forth above, Plaintiff respectfully requests that this Court deny Defendants' motion to compel arbitration because of the substantive and procedural unconscionability of the agreement.


DATED:   Park Ridge, NJ
         November 7, 2011

                                        DiChiara Law Firm LLC
                                        77 Market Street, Suite 2
                                        Park Ridge, NJ 07656


                                        By:_____/s_____
                                        Michael DiChiara, Esq. (MD 2180)