**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEPHEN MORANDO,<br>　　　　Plaintiff,<br><br>　　　　v.<br><br>NETWRIX CORPORATION and<br>MICHAEL FIMIN, Individually,<br><br>　　　　Defendants. | Civil Action No. 11-5075 (SDW)<br><br><br>OPINION<br><br><br><br>April 24, 2012 |

**WIGENTON**, District Judge.

Before this Court is Defendants NetWrix Corporation and Michael Fimin's motion to dismiss and compel arbitration pursuant to Federal Rule of Civil Procedure 12(b)(6). This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1367. Venue is proper pursuant to 28 U.S.C. § 1391(b). This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, this Court **GRANTS** Defendants' motion.

I.　FACTUAL AND PROCEDURAL BACKGROUND

Defendant NetWrix Corporation ("NetWrix"), is a Delaware Corporation which provides network security software. (Compl. ¶¶ 6-7.) NetWrix's principal place of business is in Paramus, New Jersey. (*Id.* at ¶ 8.) Defendant Michael Fimin is the chief executive officer of NetWrix. (*Id.* at ¶ 11.) Stephen Morando ("Plaintiff" or "Morando") was employed by NetWrix during two separate periods from June 29, 2009 to July 7, 2011. (*Id.* at ¶ 24.)

Morando signed an employment agreement ("2009 Employment Agreement") when he initially began working for NetWrix as an inside sales representative on June 29, 2009. (Defs.' Br.

2, Declaration of David M. Blackwell ("Blackwell Decl.") Ex. A.) The 2009 Employment Agreement contained an arbitration provision ("Arbitration Agreement"), which provided that:

> Any dispute, controversy or claim of any nature (whether under federal, state or local laws, and whether based on contract, tort, common law, statute, strict liability or otherwise) arising out of, involving, affecting or related in any way to this Agreement or any of its provisions, the performance of this Agreement, an alleged or anticipated breach of this Agreement, Employee's recruitment, employment with, or termination from [NetWrix], the conditions of Employee's employment, or any act or omission of [NetWrix] or [NetWrix's] other Employees, shall be resolved by final and binding arbitration, pursuant to the Federal Arbitration Act and/or the New Jersey Arbitration Act, in accordance with the applicable rules of the American Arbitration Association.

(*Id.* at § 11.3.) Morando resigned from his position with NetWrix in December 2010. (Blackwell Decl. Ex. B.)

Morando resumed his employment with NetWrix as an inside sales representative on April 18, 2011. (*Id.* Ex. C.) Morando again signed an employment agreement ("2011 Employment Agreement") when he resumed working for NetWrix. (*Id.*) The 2011 Employment Agreeent contained the same Arbitration Agreement as the 2009 Employment Agreement. (*Id.* at § 11.3.) The 2009 and 2011 employment agreements also contained a waiver of litigation rights provision which stated that:

> Neither party may file or maintain any lawsuit, action or legal proceeding of any nature with respect to any dispute, controversy, or claim within the scope of Section 11.3 of this Agreement, including, but not limited to, any lawsuit, action or legal proceeding challenging the arbitrability of any such dispute, except for the following purposes: (i) seeking to compel arbitration; (ii) seeking to stay or dismiss any lawsuit, action or legal proceeding filed by the other party in violation of this paragraph; (iii) seeking preliminary relief to maintain the status quo ante pending the outcome of the arbitration; or (iv) seeking to confirm, vacate, modify, and/or enforce the award of the arbitrator.

(Blackwell Decl. Ex. A, at § 11.4; Ex. C, at § 11.4.) Morando indicated that he had an opportunity to consult with an attorney regarding the terms of each employment agreement and that he

2

understood the terms of each employment agreement. (*Id.* Ex. A, at 6; Ex. C, at 6.) Morando was terminated from his position as an internal sales representative with NetWrix on July 7, 2011. (Defs.' Br. 3.)

Morando brought this action against Defendants alleging violations of the Fair Labor Standards Act ("FLSA") and the New Jersey Law Against Discrimination ("NJLAD"). (Compl.) Specifically, Plaintiff alleges NetWrix did not pay Plaintiff overtime wages as required by the FLSA, despite Plaintiff regularly working over forty hours per week in a non-exempt position. (*Id.* at ¶¶ 25, 30-31, 49-53.) Morando was diagnosed with an anxiety disorder during his employment with NetWrix and requested that NetWrix allow him to work from home for a period of time as a reasonable accommodation for his disability. (*Id.* at ¶¶ 35-40, 60-61.) Morando alleges that NetWrix engaged in unlawful employment practices in violation of the NJLAD by failing to provide a reasonable accommodation for his disability. (*Id.* at ¶¶ 63, 65, 70.) Morando further alleges that Defendants retaliated against him for requesting a reasonable accommodation for his disability by terminating his employment and reporting to the New Jersey Department of Labor and Workforce Development that he was fired for misconduct. (*Id.* at ¶¶ 41-44, 64-66, 71-73.)

Defendants claim that Morando's termination from his position as an inside sales representative was not in response to his request to work from home, but rather was a result of his poor sales performance. (Defs.' Br. 3.) Further, Defendants assert that Morando's claims must be dismissed and submitted to arbitration as they fall within the scope of the Arbitration Agreement found in the 2009 and 2011 Employment Agreements. (*Id.* at 3-4.)[1]

Morando alleges that the Arbitration Agreement is unenforceable because it is both procedurally and substantively unconscionable. (Pl.'s Br. 1.) Specifically, Morando claims that the

---

[1] Defendants have indicated that Morando signed a Separation Agreement and Release when he resigned from his position in December 2010 which waived any and all claims related to his employment with NetWrix from June 29, 2009 to December 2010. (Blackwell Decl. Ex. B.) As such, only the 2011 Employment Agreement is at issue in this case.

3

Arbitration Agreement is a contract of adhesion because he lacked any real opportunity to read the contents of the employment agreement, consult with an attorney, or have any meaningful choice in the terms of the agreement. (*Id.* at 3.) In addition, Plaintiff states that the contract was presented on a take it or leave it basis. (*Id.* at 4.) Further, Morando alleges the Arbitration Agreement is "substantively unconscionable because it significantly limits [his] statutory rights and unfairly favors Defendants." (*Id.* at 5.)

I. **LEGAL STANDARD**

"In considering a motion to compel arbitration, a court must engage in a two-step analysis: it must determine first whether there is a valid agreement to arbitrate and, if so, whether the specific dispute falls within the scope of said agreement." *Thomas v. Jenny Craig, Inc.*, No. 10-2287, 2010 WL 3076861, at * 3, (D.N.J. Aug. 4, 2010) (citing *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009); *Salvadori v. Option One Mtg. Corp.*, 420 F.Supp.2d 349, 356 (D.N.J. 2006)). "In doing so, the Court utilizes the summary judgment standard of Federal Rule of Civil Procedure 56(c)." *Id.* (citing *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 n. 9 (3d Cir. 1980)) A court shall grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Panton v. Nash*, 317 F. App'x 257, 258 (3d Cir.2009) (citing Fed. R. Civ. P. 56(c)). Therefore, a court must first determine whether there is a genuine issue of material fact as to whether a valid arbitration agreement exists. *See Par-Knit Mills, Inc.*, 636 F.2d at 54. In making this determination, a court must give the party opposing arbitration "the benefit of all reasonable doubts and inferences that may arise." *Id.* In examining whether certain claims fall within the ambit of an arbitration clause, a court must "focus . . . on the 'factual allegations in the complaint rather than the legal causes of action asserted.'" *Mutual Ben. Life Ins. Co. v. Zimmerman*, 783 F.Supp. 853, 869 (D.N.J. 1992)

(quoting *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987)). If the court decides that the claims at issue fall within the scope of the arbitration clause, the court must then refer the dispute to arbitration without considering the merits of the case. *See id.*

## II.   DISCUSSION

"The final phrase of § 2 [of the Federal Arbitration Act] . . . permits arbitration agreements to be declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract.' This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability'" *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1746 (2011) (quoting *Doctor's Assoc. Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)) ("*Concepcion*"). For an agreement to be unconscionable, it must be found to be both procedurally and substantively unconscionable. *See Antkowiak v. TaxMasters*, No. 11-1882, 2011 WL 6425567, at *2 (3d Cir. Dec. 22, 2011). "In addressing a claim that an arbitration clause is unconscionable, we apply the ordinary state law principles of the involved state or territory." *Nino v. Jewelry Exchange, Inc.*, 609 F.3d 191, 200 (3d Cir. 2010) (internal quotation and citation ommitted). Therefore, we must look to the state law of New Jersey in analyzing unconscionability.

### a.   *Existence of Valid Arbitration Agreement*

Morando argues that the Arbitration Agreement is procedurally unconscionable and thereby unenforceable because it is a contract of adhesion as (1) he was presented the Arbitration Agreement as part of his employment agreement on a take-it-or-leave-it basis, and (2) he was presented the Arbitration Agreement "with no real opportunity to read its contents, consult an attorney, or have any meaningful choice of its terms." (Pl.'s Br. 3.)

"Procedural unconscionability evaluates unfairness in the formation of the contract by examining age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining

5

tactics, and the particular setting existing during the contract formation process." *Bourgeois v. Nordstrom, Inc.*, No. 11-2442, 2012 WL 42917, at *6 (D.N.J. Jan. 9, 2012) (internal quotation and citation omitted). "A contract of adhesion . . . is a contract 'presented on a take-it-or-leave-it basis, commonly in a standardized printed form, without opportunity of the 'adhering' party to negotiate except perhaps on a few particulars.'" *Martindale v. Sandvik, Inc.*, 173 N.J. 76, 89 (2002) (citing *Rudbart v. North Jersey Dist. Water Supply Comm'n.*, 127 N.J. 344, 353, *cert. denied*, 506 U.S. 871 (1992)). "New Jersey case law provides that adhesion contracts invariably evidence some characteristics of procedural unconscionability, and a careful fact-sensitive examination into substantive unconscionability is generally required." *Vilches v. The Travelers Cos., Inc.*, 413 F. App'x 487, 493 (3d Cir. 2011) (internal quotations and citation omitted); *see also Martindale*, 173 N.J. at 89 ("The observation that a contract falls within the definition of a contract of adhesion is not dispositive of the issue of enforceability.").

In determining whether a contract, or in this instance an arbitration agreement, is enforceable, New Jersey law relies on the four *Rudbart* factors which look "not only to the take-it-or-leave-it nature" of an adhesion contract, "but also to: [(1)] the subject matter of the contract, [(2)] the parties' relative bargaining positions, [(3)] the degree of economic compulsion motivating the 'adhering' party, and [(4)] the public interests affected by the contract." *Delta Funding Corp. v. Harris*, 189 N.J. 28, 40 (2006) (quoting *Rudbart*, 127 N.J. at 356). However, regarding employment contracts, *Martindale* acknowledged that:

> The United States Supreme Court in *Gilmer* declared that '[m]ere inequality in bargaining power ... is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context.' As the Appellate Division explained in *Young v. Prudential Insurance Company of America, Incorporated*, 297 N.J.Super. 605, 688 A.2d 1069 (App. Div. 1997), "the Supreme Court [in *Gilmer* ] obviously contemplated avoidance of the arbitration clause only upon circumstances more egregious than the ordinary economic pressure faced by every employee who needs the job." 297 N.J. Super. at 621, 688 A.2d 1069. Virtually every court that has considered the adhesive effect of arbitration provisions in employment applications or employment agreements has upheld the arbitration provision contained therein

6

> despite potentially unequal bargaining power between employer and employee. *See generally, Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 170 F.3d 1, 17 (1st Cir.1999) (holding that absent showing of fraud or oppressive conduct, arbitration of plaintiff's age and gender discrimination claims pursuant to arbitration provision contained in Form U-4 was permissible); *Seus v. John Nuveen & Co.,* 146 F.3d 175, 184 (3d Cir.1998), *cert. denied,* 525 U.S. 1139, 119 S.Ct. 1028, 143 L.Ed.2d 38 (1999) (rejecting argument that disparity in bargaining power resulted in contract of adhesion); *Koveleskie, supra,* 167 F.3d at 367 (upholding employee's agreement to arbitrate Title VII claim, noting that state law does not void contracts based on unequal bargaining power or contracts made on "take-it-or-leave-it" basis); *Nur v. KFC, USA, Inc.,* 142 F.Supp.2d 48, 51-52 (D.D.C. 2001) (rejecting argument that arbitration agreement contained in employment application of restaurant's assistant manager was unenforceable contract of adhesion, where agreement was not unduly burdensome, did not favor one party over other, and provided that American Arbitration Association and FAA rules apply to arbitration proceeding).

*Martindale,* 173 N.J. at 90-91. Therefore, in light of *Martindale,* the Arbitration Agreement is not procedurally unconscionable because it was presented on a take-it-or-leave-it basis.

To the extent that Morando argues he had no real opportunity to read the contents of the employment agreement, consult with an attorney about the terms of the agreement, or have any meaningful choice in the terms of the agreement, Plaintiff's 2011 Employment Agreement indicates otherwise. Plaintiff signed the 2011 Employment Agreement beneath a general acknowledgment which stated that: (1) Plaintiff read the employment agreement in its entirety, (2) understood the terms and conditions of the employment agreement, (3) had an adequate opportunity to consider the employment agreement before signing it, and (4) had an adequate opportunity to consult with an attorney about the contents of the employment agreement. (Blackwell Decl. Ex. C, at 6.) Furthermore, case law provides that "[a] party who enters into a contract in writing, without any fraud or imposition being practiced upon him, is conclusively presumed to understand and assent to its terms and legal effect." *Rudbart,* 127 N.J. at 353. Accordingly, because Plaintiff signed the 2011 Employment Agreement, he is presumed to have understood and assented to the terms therein.

i. *Substantive Unconscionability*

"[S]ubstantive unconscionability, 'simply suggests the exchange of obligations so one-sided as to shock the court's conscience.'" *Estate of Cohen, ex rel. Perelman v. Booth Computers*, 421 N.J.Super. 134,158 (App. Div. 2011) (citing *Sitogum Holdings, Inc. v. Ropes*, 352 N.J.Super. 555, 565 (Ch. Div. 2002)). Regarding substantive unconscionability, Morando argues that the Arbitration Agreement is substantively unconscionable because it significantly limits his statutory rights and unfairly favors Defendants. (*See* Pl.'s Br. 5.) Specifically, Morando takes exception to: (1) the portion of the Arbitration Agreement that allows for an arbitrator to award reasonable attorney's fees, experts' fees, expenses and costs incurred during an arbitration to the prevailing party, and (2) the portion that precludes the arbitrator from awarding punitive or exemplary damages of any nature. (*See id.*)

The NJLAD, similar to the Arbitration Agreement, provides for the award of reasonable attorney's fees and costs to a prevailing party. *See* N.J. STAT. ANN. 10:5-27.1 (West 2002). Therefore, Plaintiff's argument regarding the unconscionability of the Arbitration Agreement as it pertains to his NJLAD claim must fail. Contrary to the NJLAD, the FLSA provides for the award of reasonable attorney's fees and costs to a prevailing plaintiff. *See* 29 U.S.C. § 216(b). Plaintiff seems to argue that because the Arbitration Agreement allows for any prevailing party, as opposed to the prevailing plaintiff, to be awarded reasonable attorney's fees and costs, the Arbitration Agreement is unconscionable. Plaintiff has failed to persuade this Court that the discrepancy between the Arbitration Agreement and the FLSA regarding attorney's fees and costs benefits NetWrix to the Plaintiff's detriment or "affront[s] the sense of justice, decency, or reasonableness" so as to make the Arbitration Agreement unenforceable. BLACK'S LAW DICTIONARY 1164 (9th ed. 2009) (defining unconscionable).

Similarly, the Arbitration Agreement's preclusion of punitive and exemplary damages is not unconscionable. The Agreement's preclusion of punitive and exemplary damages is not completely


inconsistent with the NJLAD and FLSA. The NJLAD only allows for punitive damages in the employment context where a plaintiff can show: (1) that the misconduct was especially egregious, or (2) actual participation or willful indifference by upper management. *See Rendine v. Pantzer*, 141 N.J. 292, 313-14 (1995). Concerning the FLSA, violations of section 207 allow for a plaintiff to recover liquidated damages from an employer. *See* 29 U.S.C. § 216(b). "Liquidated damages under the FLSA are compensatory, not punitive in nature." *Caminiti v. Cnty. of Essex, N.J.*, No. 04-4276, 2007 WL 2226005 *6 (D.N.J. July 31, 2007). Therefore, Plaintiff's additional arguments are also unavailing. Since the Arbitration Agreement is not unconscionable and therefore valid, this Court next examines whether Plaintiff's claim are within the scope of the Arbitration Agreement.

### ii. Scope of the Arbitration Agreement

"A clause depriving a citizen of access to the courts should clearly state its purpose. The point is to assure that the parties know that in electing arbitration as the exclusive remedy, they are waiving their time-honored right to sue." *Marchak v. Claridge Commons, Inc.*, 134 N.J. 275, 282 (1993). Here, the Arbitration Agreement by its terms is clear and unambiguous in its "intent and purpose to inform the reader that all disputes must be presented in an arbitral forum, not a court." *Curtis v. Cellco P'ship*, 413 N.J.Super. 26, 38 (App. Div. 2010); *see Singer v. Commodities Corp.*, 292 N.J.Super. 391, 405-07 (App. Div.1996) (finding that arbitration provision stating that employee agreed to arbitrate "any dispute" with employer was sufficiently broad to encompass plaintiff's CEPA claim); *Young v. Prudential Ins. Co. of America, Inc.*, 297 N.J.Super. 605, 613-14 (App. Div. 1997) (holding that employee's CEPA and LAD claims were subject to arbitration because he agreed to arbitrate "any dispute, claim or controversy" with his employer). Furthermore, the Employment Agreement contains a waiver of litigation rights. (*See Garfinkel v. Morristown Obstetrics & Gynecology Assocs.*, 168 N.J. 124, 135, (2001) ("The Court will not assume that employees intend to waive [their statutory rights] unless their agreements so provide in

9

unambiguous terms.") Therefore, Plaintiff's claims are within the scope of the Arbitration Agreement.

### III. CONCLUSION

For the reasons set forth above, this Court grants Defendants' motion to dismiss Plaintiff's complaint and compel arbitration.

<div style="text-align: right;">S/Susan D. Wigenton, U.S.D.J.</div>

cc: Hon. Madeline Cox Arleo, U.S.M.J.
     Clerk of the Court
     Parties